UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AMALGAMATED LIFE INSURANCE COMPANY     Civil Action No.
                                                                                17-cv-00091 (PKC)(ST)
                               Plaintiff,

      -against-

KEISHA BOATSWAIN, KAWESI BOATSWAIN,
EUNEL TANNIS-BOATSWAIN, ROSAVAL
BOATSWAIN, AND MELONI BOATSWAIN

                               Defendants.
-------------------------------------------------------------x

**DEFENDANTS KEISHA BOATSWAIN AND KAWESI BOATSWAIN'S
MEMORANDUM OF LAW IN OPPOSITION TO THE
<u>MOTION TO VACATE THE DEFAULT</u>**

        Defendants Keisha Boatswain and Kawesi Boatswain, by their attorney, the Law Offices of Eric Dinnocenzo, herein opposes the motion to vacate the entry of default against defendant Eunel Tannis-Boatswain and allowing her to file an answer.

<u>**Background**</u>

        This controversy was filed as a statutory interpleader action pursuant to 28 U.S.C. 1335. Plaintiff Amalgamated Life, pursuant to an agreement with Correction Captains Association, issued a life insurance policy to Kenneth Boatswain, who was formerly a corrections officer, with policy number 260B98 and a death benefit of $30,000. (Exhibit A).

        On or about October 15, 2003, Mr. Boatswain executed forms that made defendants Keisha Boatswain and Kawesi Boatswain, his two children, the beneficiaries of the policy. (Exhibit B).

        On or about March 1, 2006, Mr. Boatswain executed a benefits form that merely identified defendant Eunel Tannis-Boatswain as his spouse. (Exhibit C). The form was not

1

specific to the life insurance policy, but instead was an enrollment form that included medical, dental and life insurance benefits.  Tellingly, Mr. Boatswain chose not to provide Eunel Tannis-Boatswain with spousal coverage for medical or dental benefits by writing "None" in the space next to "Spouse Coverage."  The form also contained a dedicated space to appoint a life insurance beneficiary and it is left blank.  Thus, the life insurance beneficiaries remained Keisha and Kawesi Boatswain.

**Procedural History**

Apparently believing that others could make a claim for the policy and it could be subjected to multiple liability if it paid the death benefit, the plaintiff commenced this action in interpleader.  The procedural history is as follows:

| | | |
|---|---|---|
| January 6, 2017 | - | Summons and complaint filed (Exhibit C) |
| January 10, 2017 | - | Personal service upon Eunel-Tannis Boatswain (Docket Entry 12) (Exhibit C); |
| April 13, 2017 | - | Service of Answer and Cross-Claims upon Eunel Tannis-Boatswain by regular mail (Docket Entry 15) (Exhibit D); |
| May 18, 2017 | - | Service of Answer and Cross-Claims upon Eunel Tannis-Boatswain by certified mail, unclaimed (Exhibit D); |
| August 9, 2017 | - | Clerk entry of default (Docket Entry 24) |
| September 15, 2017 | - | Service of plaintiff's motion for default judgment on Eunel Tannis-Boatswain (Docket Entry 30). |
| April 2, 2018 | - | Motion to vacate the default |

**Argument in Opposition**

"In determining whether good cause exists for relieving a party from a finding of default under Rule 55(c), courts consider (1) the willfulness of the default, (2) the existence of a meritorious defense, and (3) the level of prejudice that the non-defaulting party may suffer

2

should relief be granted." *See Cordero v. AT&T*, 15-cv-5601, 2017 U.S. Dist. LEXIS 999 (E.D.N.Y. Jan. 4, 2017) (citations and quotations omitted). "Courts have also considered whether entry of a default judgment would lead to a harsh result or to the entry of a large sum of money." *Richardson Greenshields Secur., Inc. v. Int'l Petroleum Corp.*, 1988 U.S. Dist. LEXIS 12986, at *6 (S.D.N.Y. Nov. 23, 1988).

Regarding the first factor of willfulness, although decided in the context of a default judgment as opposed to an entry of default, and thus not applying quite as rigorous of an analysis, in *Weifang Xinli Plastic Products v. JBM Trading, Inc.*, 11-cv-2710, 2014 U.S. Dist. LEXIS 119073, * 17 (S.D.N.Y. Aug 26, 2014) the court rejected a motion to vacate the default where the defendant was aware of the lawsuit for at least 6 months prior to the entry of default.[1] In *Durso v. Barsyl Supermarkets*, 11-cv-5544, 2016 LEXIS 81986 (E.DN.Y. June 23, 2016), the court rejected the excuse that the defendant defaulted based on confusing the complaint with another legal matter, when that explanation was undermined by the fact that the other action came later in time.

In her affidavit, Eunel Tannis-Boatswain makes a number of false assertions. Although not directly relevant to this life insurance dispute, she makes it seem as if Keisha Boatswain defrauded her father out of his Brooklyn property. This is a false statement. In 2013, the decedent made Keisha his Power of Attorney. (Ex. F). The decedent moved in with her in February 2015 and lived with her until he passed away. Eunel Tannis-Boatswain never visited him either at the hospital or at Keisha's home. (Exhibit F). Recently, a Kings County Supreme

---

[1] "Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment . . .because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Weifang Xinli Plastic Products v. JBM Trading, Inc.*, 11-CV-2710, 2014 U.S. Dist. LEXIS 119073, * 16 (S.D.N.Y. Aug. 26, 2014) (citation and quotation omitted).

3

Court judge ordered on January 18, 2018 that Eunel Tannis-Boatswain must pay monthly use and occupancy of $2,200 for the premises and she agreed to pay $28,000 in back rent. (Exhibit E).

Her sole excuse for not appearing in this action until now, one year and three months after it was filed, is that "I have always believed that this proceeding commenced by Amalgamated Life Insurance Company was associated with the Surrogate's Court proceeding." (Dec. of Eunel Tannis-Boatswain, para. 21). However, this strains credibility as there is certainly a distinction between a Federal Court action and a state Surrogate's Court proceeding, and further, the instant action was commenced by Amalgamated Life as plaintiff and there would be no reason why it would start a Surrogate's Court proceeding. In fact, the person who commences a Surrogate's action is titled a petitioner, while in a Federal Court action it is of course the plaintiff.

Eunel Tannis-Boatswain admits in paragraph 20 that she was at the time represented by an attorney, Victoria Brown. Keisha Boatswain attests in an affidavit that at the Housing Court in January 2017, Attorney Brown stated to her attorney that she would be representing Eunel Tannis-Boatswain in the instant action, thus showing that she was aware of the action. (Ex. F). Yet she does not provide any credible explanation for why she confused the two proceedings, except for a general and conclusory statement.

In addition, as shown above, Eunel Tannis-Boatswain was served with legal papers on multiple occasions in this matter. The undersigned even sent an Answer with Cross-Claims to her by certified mail which she neglected to collect at the post office. (Exhibit D). She gives no excuse for why she did not receive her mail, or why she did not recognize that the attorneys sending her legal papers in this action were different than those in the Surrogate's Court action,

as Keisha Boatswain has a different attorney in that matter than the undersigned. A party should not be allowed to ignore service of process and certified mail and then suddenly appear in an action months after entry of default.

      Concerning the second prong of showing the existence of a meritorious defense, it has been observed that, "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v McNulty*, 137 F.3d 732, 740 (2nd Cir. 1998). Under no reasonable interpretation can the insurance forms from 2003 or 2006 be found to have made Tannis-Boatswain a beneficiary of the policy. Again, the space in the 2006 form for life insurance beneficiary was left blank, making it unchanged from 2003 when it named Keisha and Kawesi as beneficiaries. To hold that the 2006 form appointed Eunel as beneficiary would be to completely disregard its contents. Nor has Tannis-Boatswain claimed there was any undue influence involved in this matter. In fact, the 2003 naming of his children as beneficiary was quite reasonable, since Tannis-Boatswain was not even married to him at that time. They later married in 2005, and again, the 2006 insurance form simply identifies her as a spouse and the decedent actually made the choice not to provide her with medical or dental coverage. He left the life insurance beneficiary entry blank which shows that he did not want her to become beneficiary. It is quite reasonable for a father to want to leave a small life insurance policy to his children. Tannis-Boatswain has not alleged, nor can she credibly do so at this stage, that there was undue influence upon the insured twelve years ago in 2006. In order to do so, she would have to also show that there was undue influence in not providing her with medical or dental coverage, something that she obviously would have been aware of and never chose to contest.

Lastly, the third prong concerning prejudice is satisfied because, by drawing out this proceeding, Eunel is requiring continued legal work by or on behalf of Keisha and Kawesi for what is a relatively small death benefit of $30,000. There is also the prejudice to Amalgamated Life at having continued involvement in this litigation. This is not a matter involving a substantial death benefit and there will be no significant harm if it is paid out to Keisha and Kawesi. Eunel will still inherit an estate based on her status as surviving spouse. Further, this is not a matter where a stranger or non-relative made himself the beneficiary through fraud and deception, and it would be unjust to award him the policy. Keisha and Kawesi are the insured's children and it is natural for them to receive the death benefit.

**Conclusion**

Based on the clear record before this Court, the death benefit should be paid to Keisha and Kawesi Boatswain as they are named beneficiaries. There is no need for a trial of this matter, and no need to call witnesses before the Court and take testimony. The named beneficiaries should be paid.

Moreover, this Court is empowered upon a review of the record to award summary judgment to Keisha and Kawesi as there is no triable issue of fact that they are entitled to the death benefit.

WHEREFORE, defendants Keisha and Kawesi Boatswain respectfully request that this Court deny Eunel Tannis-Boatswain's motion in its entirety, and that it grant their motion for summary judgment and enter judgment in their favor awarding them the $30,000 death benefit, plus interest, costs and disbursements, and all other relief that is just and proper.

Dated:    New York, New York
          April 16, 2018

                                LAW OFFICES OF
                                ERIC DINNOCENZO

By:    *s/Eric Dinnocenzo*
        Eric Dinnocenzo (ED 3430)
        Attorney for Defendants Keisha Boatswain
        and Kawesi Boatswain
        469 Seventh Avenue, Suite 1215
        New York, NY 10018
        (212) 933-1675