**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

AMALGAMATED LIFE INSURANCE COMPANY,

                                                  Plaintiff,

-against-

KEISHA BOATSWAIN, KAWESI BOATSWAIN,
EUNEL TANNIS-BOATSWAIN,
ROSAVAL BOATSWAIN, MELONI BOATSWAIN,

                                            Defendants.
-----------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

**17-CV-00091 (PKC) (ST)**

**TISCIONE, United States Magistrate Judge:**

      Plaintiff Amalgamated Life Insurance Company ("Plaintiff", "Amalgamated") brought this action on January 6, 2017 by filing a Complaint in interpleader against Keisha Boatswain, Kawesi Boatswain, Eunel Tannis-Boatswain ("Mrs. Tannis-Boatswain"), Rosaval Boatswain, and Meloni Boatswain (collectively, "Defendants") seeking to resolve competing claims to the proceeds of a Life Insurance Policy ("Policy") that Amalgamated issued to Kenneth A. Boatswain. Dkt. No. 1 ("Compl." or the "Complaint"); *see also* Dkt. No. 39-1 (Life Insurance Policy). Defendants Eunel Tannis-Boatswain, Rosaval Boatswain, and Meloni Boatswain (collectively "Co-Defendants") failed to appear, answer, or otherwise timely respond to the Complaint, despite proper service. *See* Dkt. No. 29 ("Aff. Mot. Default J.") ¶¶ 7-9, 14-16; *see also* Dkt. Nos. 12, 16, 17 (Executed Affidavits of Service). Plaintiff filed a request for entry of default of Co-Defendants by the Clerk of the Court on August 8, 2017. Dkt. No. 9. Default was entered on August 9, 2017. Dkt. No. 10.

      On September 15, 2017, Plaintiff moved for default judgment against Co-Defendants, requesting that they be dismissed from the case and enjoined from further prosecution. Dkt. No.

1

28 ("Mot. Default J."). On February 23, 2018, Amalgamated moved to deposit funds into the Court Registry. Dkt. No. 33 ("Mot. to Deposit Funds"). On April 2, 2018, one of the Co-Defendants, Eunel Tannis-Boatswain, moved to vacate the entry of default and for leave to file an Answer. Dkt. No. 34 ("Mot. to Vacate"). Defendants Keisha and Kawesi Boatswain opposed the motion on April 16, 2018. Dkt. No. 40 ("Mem. Opp'n Mot."). The Honorable Pamela K. Chen referred Amalgamated's Motion for Default Judgment and Mrs. Tannis-Boatswain's Motion to Vacate to me. Referral Orders dated September 19, 2017, and April 4, 2017.

Based on a review of the well-pleaded allegations and evidence presented in the filings, I respectfully recommend that the Court DENY Co-Defendant Tannis-Boatswain's Motion to Vacate Entry of Default and GRANT Amalgamated's Motion for Default Judgment as to Co-Defendants on the condition that Plaintiff deposit the proceeds of the disputed Life Insurance Policy.

## I. BACKGROUND

Amalgamated issued a Life Insurance Policy to Kenneth A. Boatswain ("Mr. Boatswain") with a total benefit of $30,000 plus interest payable to Mr. Boatswain's beneficiaries in the event of his death. Dkt. No. 32 ("Mot. Default J. Mem.") at 1-2. On October 15, 2003, Mr. Boatswain executed a Benefits Fund Enrollment Form identifying Defendants Meloni Boatswain and Keisha Boatswain as his daughters and Defendant Kawesi Boatswain as his son, and designating Defendants Keisha Boatswain and Kawesi Boatswain as the beneficiaries to the Policy. Dkt. No. 22-1 ("2003 Enrollment Form") at 1; *see also* Mot. Default J. Mem. at 2. On March 1, 2006, Mr. Boatswain executed another Benefits Fund Enrollment Form identifying Defendant Eunel Tannis-Boatswain as his spouse. Dkt. No. 22-1 ("2006 Enrollment Form") at 2; *see also* Mot. Default J. Mem. at 2. The 2006 Enrollment Form did not

identify any beneficiaries to the Policy. *See* 2006 Enrollment Form. Mr. Boatswain died on October 25, 2016. Mot. Default J. Mem. at 2. After Mr. Boatswain's death, Amalgamated staff communicated with Defendants Keisha Boatswain and Eunel Tannis-Boatswain about the Policy. *Id.* at 2. Both Defendants asserted claims to the proceeds payable under the Policy. *Id.* To resolve the competing claims to the proceeds, Amalgamated brought the instant interpleader action. *Id.* at 2-3.

## II. MOTION TO VACATE

### A. Legal Standard

Under the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The Second Circuit has held that the Court must evaluate the following factors to determine whether good cause to set aside a default has been established: (1) whether setting aside the default would prejudice the adversary; (2) whether a meritorious defense is presented; and (3) whether the default was willful. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Rolle v. Hardwick*, 2016 WL 3030242, at *2 (E.D.N.Y. May 4, 2016), *report and recommendation adopted by* 14-cv-5247, Dkt. No. 29 (E.D.N.Y. May 25, 2016).

### B. Analysis

#### i. Willfulness

The Second Circuit "ha[s] interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). For example, "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id.*

3

"Courts have held the default to be willful when a defendant simply ignores a complaint without action, or when a lawyer neglects a case for an extended period of time." *Brown v. DeFilippis*, 695 F. Supp. 1528, 1530 (S.D.N.Y. 1988) (citations omitted).

Here, Eunel Tannis-Boatswain waited for over a year after proper service of the Complaint and seven months after service of Plaintiff's Motion of Default Judgment to appear in the case. *See* Dkt. No. 12 (Executed Affidavit of Service of Complaint dated January 10, 2017); Dkt. No. 30 (Certificate of Service of Default Judgment Motion dated September 15, 2017); Dkt. No. 34 (Eunel Tannis-Boatswain's first appearance in the case for a Motion to Vacate Default on April 2, 2018). Courts have found this length of time to be significant in the default context. *See, e.g., Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 454 (S.D.N.Y. 2007) ("[T]he defendants purposely ignored the summons and complaint for over *seven months* after they were served." (emphasis added)), *aff'd*, 316 F. App'x 51 (2d Cir. 2009); *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) ("[T]he defendants failed to file a responsive pleading for over *nine months* after the receipt of the summons and complaint, nearly *eight months* after the defendants were informed that the plaintiffs had requested an entry for default….").

Mrs. Tannis-Boatswain's only excuse is that she "always believed that this proceeding…was associated with [her]… Surrogate's Court proceeding [in state court]." *See* Dkt. No. 35 ("Aff. Mot. Vacate") ¶ 21; *see also* Dkt. No. 37 ("Mem. Mot. Vacate") at 4. This explanation is unconvincing given that Mrs. Tannis-Boatswain had counsel assisting her with the Surrogate's Court proceeding. Aff. Mot. Vacate ¶ 20-21. Defendant Keisha Boatswain also points to evidence that Mrs. Tannis-Boatswain may have informed this prior state court counsel about the instant case before the entry of default. Dkt. 39-6 ("Aff. Opp'n Mot.") ¶ 6 ("I

4

witnessed a conversation at the [Housing] court in which [Mrs. Tannis-Boatswain's state court counsel] Attorney Brown told my attorney that she would be representing Eunel in this interpleader action…."). Evidence that Mrs. Tannis-Boatswain contacted a lawyer about this case undermines her assertion that she was confused about her obligation to respond to the Complaint. *See, e.g., Todtman*, 241 F.R.D. at 454 (Defendant's assertion that "he mistakenly believed th[e summons and complaint] documents [to be] related to another case" was undermined by plaintiff's credible evidence that Defendant had contacted a lawyer about the case.).

Even if Mrs. Tannis-Boatswain had not consulted a lawyer regarding the current proceeding, "*pro se* status does not excuse the defendants' complete failure to respond to the complaint" for this amount of time because even "a reasonable non-lawyer should have realized that *some* sort of response to the summons and complaint was necessary." *Todtman*, 241 F.R.D. at 454 (emphasis in original) (noting failure to respond for seven months). Therefore, I conclude that Defendant Eunel Tannis-Boatswain willfully ignored the summons and Complaint for a significant amount of time without a satisfactory explanation.

      ii.   Meritorious Defense

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *McNulty*, 137 F.3d at 740 (quoting *Enron Oil Corp.*, 10 F.3d at 98). In other words, "the defaulting party must present a meritorious defense demonstrating 'that if relief is granted the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand.'" *In re Martin-Trigona*, 763 F.2d 503, 505 n.2 (2d Cir. 1985) (quoting 10 C.

5

Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2697, at 525 (2d ed. 1983)); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party.").

Mrs. Tannis-Boatswain has made no such showing. Defendant Tannis-Boatswain points to a 2006 Association Benefits Fund Enrollment Form to argue that she is entitled to the insurance proceeds. Mem. Mot. Vacate at 5. This form names Mrs. Tannis-Boatswain as the spouse of the deceased, but names no beneficiaries. *See* 2006 Enrollment Form. Whether this form supersedes a previous enrollment form that named Keisha Boatswain and Kawesi Boatswain as dependents does not alter the fact that Mrs. Tannis-Boatswain was *never* properly named as a beneficiary under the Policy. *See* 2003 Enrollment Form. The fact that Amalgamated initially contacted Defendant Tannis-Boatswain after the decedent's death (*see* Aff. Mot. Vacate ¶ 24) is also irrelevant to the issue of whether she is a beneficiary of the Policy.

Other than the above undisputed facts, Mrs. Tannis-Boatswain offers only conclusory statements that she "[c]learly…ha[s] a claim to the insurance proceeds" and proposes a counterclaim that Amalgamated "breached the insurance contract by refusing to pay the full death benefit." *Id.* at 24; Dkt. No. 38-2 at ¶ 30 (Proposed Answer). But "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.*, 10 F.3d at 98; *see also Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 320–21 (2d Cir. 1986) ("Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its

6

general denials with some underlying facts."). Accordingly, Defendant Tannis-Boatswain has not presented a meritorious defense sufficient to vacate an entry of default.

### iii. Prejudice

Defendants Keisha Boatswain and Kawesi Boatswain argue that "the third prong concerning prejudice is satisfied because, by drawing out this proceeding, Eunel is requiring continued legal work by or on behalf of Keisha and Kawesi for what is a relatively small death benefit of $30,000." Mem. Opp'n Mot. at 6. "[D]elay standing alone does not establish prejudice," however. *Enron Oil Corp.*, 10 F.3d at 98. Nevertheless, "[a]n absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment." *McNulty*, 137 F.3d at 738. Courts have discretion to enforce defaults without a strong showing of prejudice "if … persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense." *Id.*; *see also United Pet Grp., Inc. v. Axon US*, Corp., No. 13-CV-126 WFK MDG, 2013 WL 5592617, at *4-*5 (E.D.N.Y. Oct. 10, 2013) (a showing of willful default or absence of a meritorious defense can alone be sufficient to warrant a denial of a motion to vacate entry of default). Given the strong showing of willfulness and the absence of any meritorious defenses, the lack of significant prejudice is not persuasive here. *See Am. All. Ins. Co. v. Eagle Ins. Co*., 92 F.3d 57, 61 (2d Cir. 1996) ("[A]buses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct.").

In conclusion, I recommend that the motion to vacate the entry of default be DENIED.

### III.    MOTION FOR DEFAULT JUDGMENT

#### A.  Legal Standard

The court may grant a plaintiff a default judgment after two steps are taken.  First, the clerk must administratively enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ."  Fed. R. Civ. P. 55(a).  A court considers a default entry against a party to be an admission to all of the well-pleaded allegations in the complaint regarding liability.  *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Second, if the defaulting party fails to set aside the entry of default under Rule 55(c), the opposing party may file a motion for default judgment to establish liability and request relief. *See* Fed. R. Civ. P. 55(b)(2).

In ruling on a motion for default judgment, the court must determine whether the plaintiff's allegations establish "liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court retains discretion under 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action....").  In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored."  *Enron Oil Corp.*, 10 F.3d at 95–96.  Thus, the court can grant a motion for default judgment only if the plaintiff has satisfied its burden of demonstrating that the unchallenged allegations and all reasonable inferences drawn from the evidence establish the defendant's liability on each asserted cause of action.  "Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for

liability and relief." *Rolls-Royce PLC, et al. v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010). Ultimately, the decision to grant a motion for default judgment is left to the sound discretion of the court "because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp.*, 10 F.3d at 95.

### B. Analysis

#### i. Liability

An interpleader complaint requires a two-stage inquiry. "The first stage requires the stakeholder to demonstrate that the requirements for interpleader have been met…." *Metro. Life Ins. Co. v. Little*, No. 13 CV 1059 BMC, 2013 WL 4495684, at *1 (E.D.N.Y. Aug. 17, 2013). "The second stage determines the adverse claims between the claimants." *Id.*

Amalgamated has sufficiently pled the elements of statutory interpleader under 28 U.S.C. § 1335 for the first stage of the inquiry. The statute requires that the plaintiff allege: "(1) that it is in possession of a single fund of value greater than $500; (2) that the action involves two or more adverse claimants of diverse citizenship; (3) that it has deposited or is depositing[1] the fund with the court; and (4) that it has a real and reasonable fear of double liability or vexatious, conflicting claims." *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 103 (E.D.N.Y. 2013) (citing 28 U.S.C. § 1335 (2012)). Amalgamated has pled that the proceeds of the Life Insurance Policy at issue constitute "$30,000.00 plus interest" and has requested to deposit those funds with

---

[1] Some courts in the Second Circuit consider an actual deposit to be a "prerequisite[] to the district court's exercise of jurisdiction in a statutory interpleader case." *Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 301 (S.D.N.Y. 2012). Others "construe[ it] as a requirement of maintaining interpleader jurisdiction, rather than a prerequisite to bringing suit." *William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355, 360 (S.D.N.Y. 2008). In view of this disagreement, the Court recommends permitting Plaintiff to deposit the insurance proceeds before relief is granted. *See infra* Section II.b.ii.

9

the Court (Compl. ¶ 9, 17), fulfilling the first and third requirements. *See, e.g., Perlman v. Fid. Brokerage Servs. LLC,* 932 F. Supp. 2d 397, 415 (E.D.N.Y. 2013) ("[T]he Court finds that Ameriprise has satisfied all of the requirements of the first stage of an interpleader action…. [where, *inter alia*,] Ameriprise has requested permission to deposit the relevant funds with the Court."). The Complaint names six adverse defendants that "have or may have claims against the life insurance proceeds." Compl. ¶ 14. The Defendants are of diverse citizenship—all are citizen of New York except for Defendant Kawesi Boatswain, who is a citizen of the State of Georgia. *See id.* at ¶¶ 4-8. Thus, the second element is satisfied. Finally, for the fourth element, the dispute amongst Defendants about the rightful beneficiary of the Life Insurance Proceeds (*see id.* ¶¶ 12-13) demonstrates that Amalgamated "has a real and reasonable fear of double liability or vexatious, conflicting claims." *Metro. Life Ins. Co.*, 966 F. Supp. 2d at 103; *see also Bank of Am., N.A. v. Morgan Stanley & Co. Inc.*, No. 10 CIV. 6322 RJH, 2011 WL 2581765, at *3 (S.D.N.Y. June 24, 2011) ("[Defendants]'s competing interpretations of how the Interpleader Stake ought to be distributed therefore exposed [Plaintiff] to the threat of multiple liability, and an interpleader action is appropriate."). In sum, the requirements for the first stage of interpleader action have been met.

      ii.  <u>Remedy</u>

For the second stage of the interpleader inquiry—adjudication of any adverse claims—Amalgamated has requested dismissal of Co-Defendants and an order "enjoining and restraining [them]… and …[their] agents, attorneys, representatives, assigns and all other persons claiming by, through, or under …[them] …, from instituting or prosecuting further any proceeding in this Court or any other court of law or in equity against the Plaintiff on account of the Life Insurance Policy at issue in this action." Mot. Default J. at 1-2.

Although some courts in the Second Circuit consider interpleader jurisdiction established when the Plaintiff asserts that it is willing to and able to deposit the fund with the court (*see supra* note 1), actual deposit of the fund is typically ordered before statutory interpleader relief is granted.  *See e.g.*, *New York Life Ins. Co. v. Singh*, No. 14CV5726NGSMG, 2017 WL 4350416, at *2 (E.D.N.Y. May 26, 2017), *aff'd sub nom. New York Life Ins. Co. v. Sahani*, No. 17-1804-CV, 2018 WL 1790162 (2d Cir. Apr. 16, 2018) ("I did not reach NYL's requests for an injunction prohibiting further actions, for discharge of liability and to be dismissed from the action, or for attorney's fees and costs since NYL had yet to deposit the interpleader fund."); *MWH Int'l, Inc. v. Inversora Murten S.A.*, No. 11 CIV. 2444 HB, 2012 WL 12886, at *2 (S.D.N.Y. Jan. 3, 2012) ("At the oral argument, I ordered MWH to deposit the funds with the Court so that I may properly dismiss it from the action.").  Thus, the below recommendations for granting relief are conditioned on the Court ordering Plaintiff to deposit the insurance proceeds with the Court.[2]

When the requirements of § 1335 have been met, including actual deposit of funds, dismissal of Co-Defendants will be proper as they have "forfeited all claims to payment of funds … by failing to appear in this action after the interpleader action was asserted against [them]." *Aegean Bunkering (USA) LLC v. M/T AMAZON (IMO 9476654), Its Engines, Tackle & Apparel*,

---

[2] Under § 1335, a stakeholder is to deposit a bond in the amount that the claimants "are claiming or may claim to be entitled." 28 U.S.C. § 1335.  Thus, "under statutory interpleader 'an interpleading plaintiff must deposit with the Court the highest amount claimed by defendants.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Grp.*, Inc., 691 F. Supp. 618, 621 (E.D.N.Y. 1988) (quoting *Nationwide Mut. Ins. Co. v. Eckman*, 555 F.Supp. 775, 778 (D. Del. 1983)).  Amalgamated has requested permission to deposit the principal amount of the Life Insurance proceeds, totaling $30,000, "plus interest" in the Court Registry.  Mot. Deposit Funds at 1-2.  Its motion to deposit the funds is unopposed, and no dispute has arisen over the amount to be deposited.  This Court thus sees no legal impediment to allowing Plaintiff to deposit the proceeds plus interest, as dictated by the Insurance Policy, with the Court.  Though the amount of interest has not been specified, the remaining defendants will have an opportunity to dispute the total amount deposited with the Court as Plaintiff has not yet renewed its request to be discharged from the case.  *Compare* Compl. ¶ E (requesting discharge from liability) *with* Mot. Default J. (requesting only dismissal of Co-Defendants and injunction).

No. 14-CV-9447 (KBF), 2016 WL 8254780, at *2 (S.D.N.Y. May 23, 2016). Defendant Eunel Tannis-Boatswain waited for over a year after proper service of the Complaint and seven months after service of Plaintiff's Motion of Default Judgment to appear in the case. *See* Dkt. No. 12 (Executed Affidavit of Service of Complaint dated January 10, 2017); Dkt. No. 30 (Certificate of Service of Default Judgment Motion dated September 15, 2017); Dkt. No. 34 (Eunel Tannis-Boatswain's first appearance in the case for a Motion to Vacate Default on April 2, 2018). Defendants Rosaval Boatswain and Melani Boatswain have entirely failed to appear after being served the Complaint on March 2, 2017. *See* Dkt. Nos. 16, 17 (Executed Affs. of Service). Dismissal of all Co-Defendants is thus appropriate.

In a statutory interpleader action meeting the requirements of § 1335, 28 U.S.C. § 2361 also allows "a district court …[to] …enter its order restraining …[all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action…." 28 U.S.C. § 2361 (2012). In addition, a court has discretion to "make the injunction permanent" under the statute. *Id.* Here, upon deposit of the disputed funds, the requirements of § 1335 will be satisfied and Plaintiff will be "faced with rival claims to the fund itself." *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 320 (S.D.N.Y. 2014) (quoting *Bank of Am., N.A. v. Morgan Stanley & Co. Inc.*, No. 10 CIV. 6322 RJH, 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011)). "[S]uits sought to be enjoined in such situations are squarely within the language of [Section 2361]." *Id.* at 319 (second alteration in the original) (quoting *Bank of Am., N.A.*, 2011 WL 2581765, at *4). "An injunction against overlapping lawsuits is desirable to insure the effectiveness of the interpleader remedy….[and to] prevent[] the multiplicity of actions …[,] reduc[ing] the possibility of inconsistent determinations." *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y.

1992). Accordingly, the requested permanent injunction restraining Co-Defendants "from instituting or prosecuting further any proceeding in this Court or any other court of law or in equity against the Plaintiff on account of the Life Insurance Policy at issue in this action" (Mot. Default J. at 1-2) is appropriate. *See, e.g.*, *N.Y. Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 720 (E.D.N.Y. 2012) ("Here, a permanent injunction restraining the four Defendants from continuing or bringing any suits against N.Y. Life with regard to the Death Benefits at issue is necessary to protect N.Y. Life from overlapping lawsuits and to ensure the effectiveness of the interpleader remedy.")

Accordingly, I respectfully recommend GRANTING Amalgamated's Motion for Default Judgment, including the requested dismissal of and injunction against Co-Defendants, on the condition that Plaintiff deposit the proceeds of the disputed Life Insurance Policy with the Court Registry.

### IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court DENY Defendant Tannis-Boatswain's Motion to Vacate Entry of Default. I further recommend that the Court GRANT Amalgamated's Motion for Default Judgment as to Co-Defendants on the condition that Plaintiff deposit the proceeds of the disputed Life Insurance Policy.

### V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this report and recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Porter v. Potter*, 219 F. App'x 112, 113 (2d Cir.

2007) (quoting *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam)).

**SO ORDERED.**

          /s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
      July 20, 2018